### THE INHABITANTS OF GREEN *vs.* THE INHABITANTS OF BUCK-FIELD.

The *Stat.* 1821, *ch.* 122, *sec.* 2, which fixes the settlements of persons not paupers, in the towns where they resided at the passage of the act; relates as well to those who previously had settlements in this State, as to those who had none.

Supplies cannot be considered as furnished to a man as a pauper, under that clause in the act, unless furnished either to himself personally, or to some of his family, who reside under his immediate care and protection.

This cause, which was *assumpsit* for the support of a pauper, came up to this Court upon exceptions taken to the opinion of *Smith J.* before whom it was tried in the Court below.

The pauper was the wife of *Jeremiah Hodgdon, Jr.* whose lawful settlement was in *Buckfield*, until *March* 21, 1821. On that day he resided and had his home in *Lewiston*, where he had dwelt for more than a year previous, without having personally received supplies from any town as a pauper. But two of his minor children at that time, and for a long period before, were supported as paupers by *Buckfield.* It was proved, however, that his family had long since been broken up, the husband, wife, and children having separate places of residence, and the latter wholly abandoned by the parents, and released from all control by them for nine years preceding. The husband had been enrolled in the militia of *Lewiston*, previous to 1821, but was very poor, and sometimes a transient person, and had not lived with his wife for several years past.

Upon this evidence the Judge was of opinion that the action was not maintainable, and ordered a nonsuit, to which the plaintiff excepted.

This cause was argued at *June* term 1823, by *Bond* and *A. Belcher* for the plaintiffs, and *Sprague* for the defendants.

*For the plaintiffs*, it was said that the settlement of the father was not affected by the *Stat.* 1821, *ch.* 122, because, by a fair construction of its provisions, he must be understood to have received supplies as a pauper, within a year previous to the passage of the statute. For he was bound to support his children, and *they* were assisted as paupers. It was not the intent of the legislature to change the settlement of persons thus situated; and yet if the father is settled at *Lewiston*, the children follow him, being minors, and thus the settlement of paupers will be transferred, contrary to the express language of the statute.

If the father is not liable for these supplies, the children are, both by common law, and by the statute; and to this purpose are to be regarded as adults, relieved as paupers, and so within the exception in the act.

But it was not the intention of the legislature, by the peculiar provisions of this statute, to change the settlement of any persons *already settled* in this State. Before that period there were many persons who had no settlement in the territory which now

constitutes *Maine*, and who, if hereafter falling into distress, could not be removed to *Massachusetts*, though settled there, but must be relieved here, at the expense of the State. The legislature intended to fix the settlement of this class of persons, in the several towns which might then be enjoying the benefit of their industry. Other persons already had legal settlements, which were recognised and expressly confirmed by the first section of the act. It was not designed to annul existing settlements in any case, merely to give new ones in other places. There was no necessity for such a provision. This construction gives operation to all the provisions of the statute; while a different interpretation defeats the first section, as it respects all those who, though lawfully settled in one town in the State, yet resided in another. . The existing evil was confined to the case of those who had no settlement in *Maine*, and to these alone ought the provision to be restricted.

*For the defendants*, it was replied that though the father might be liable at law, for necessaries furnished to his child, yet these could not be considered as supplies furnished to *him*, *as a pauper*, without doing violence to the language of the statute, which evidently relates only to the person actually receiving relief. The interpretation adopted on the other side would render any citizen, however wealthy, constructively a pauper; for all the kindred, who are bound to relieve their relatives falling into distress, and even strangers, who may be under contract for their maintenance, must be considered as receiving relief *as paupers*, whenever the least assistance was rendered to those they were bound to support.

After this argument the cause stood over for advisement, and at *August* term 1824, in Oxford, the opinion of the Court was delivered by

MELLEN C. J. It is admitted that the pauper has her settlement in *Buckfield*, unless her husband gained one in *Lewiston*, in virtue of his residence in that town on the 21st of *March* 1821; that being the date of the statute relative to the settlement and support of the poor. The counsel for the plaintiffs have relied upon two objections, to shew that the residence of the pauper's

husband in *Lewiston*, at the time alluded to, has not changed his settlement from *Buckfield* to that town.

It is urged that the intention of the legislature was that no persons, excepting those who had no settlement in any town in the State, should gain one in the town in which they might reside at the date of the act, in virtue of such residence. And to establish this position, the counsel have relied on the last clause of the first section, which is in these words;—" but all settlements *already* " *gained* by force of. said laws, or otherwise, shall remain until " lost by gaining others in some of the ways hereafter mentioned." We do not perceive the force of this argument; for though the clause relates to settlements " already gained," it also provides for their continuance no longer than till others shall be gained, in *some of the ways afterwards mentioned* in the act; and *residence* in any town at the time, and under the circumstances, mentioned in the act, is one of those ways. We are therefore of opinion that the pauper was a person *capable* of gaining a settlement in the manner before stated, within the true intent of the act.

The next inquiry is whether he *did so gain one.* Under the *seventh* mode of gaining a settlement, stated in the *second* section, is the following provision;—" Any person, resident in any town at " the date of the passage of this act, *who* has not within one year " previous to that date received support or supplies from some " town *as a pauper*, shall be deemed to have a settlement in the " town where he dwells and has his home." The case finds that the pauper did on that day dwell and have his home in *Lewiston*, and that he had not personally received support or supplies as a pauper, from any town, within one year next preceding. The only question then is, whether supplies furnished during that year to *his children*, who had not lived with him, nor been dependent on him, for several years before, are to be considered as furnished *to the father, as a pauper*, within the true meaning of the statute. The plaintiff's counsel contend that they are. In giving a construction to that clause, it should be remembered that the statute provisions with respect to the settlement and support of the poor are perfectly arbitrary; not founded on any natural connection or moral obligation; at least so far as they regard the liability of towns.

Hence the argument which has been urged, grounded on the liability of a father to maintain his children, seems to furnish no reason for the construction contended for by the plaintiffs. Besides, there seems little room for *construction*, where the language of the statute is plain and unambiguous. It is equally true that in such cases all the words of a statute are to be considered as having a meaning; and none are to be rejected as useless. As the statute was intended to introduce and establish new principles, it seems that the provision under consideration was designed to fix all settlements on the day the act was passed; so that in the decision of questions which might afterwards arise, the 21st day of *March* 1821, might be resorted to as the point at which to commence inquiries. But it will be seen at once that the principle urged by the plaintiffs' counsel would completely defeat such an object; because if supplies furnished to a man's children in other parts of the State, and having no connection with his family, are to be considered as constructively furnished to the father, his residence in a particular town, on the day the act was passed, will be no decisive proof of his having gained a settlement in such town; all will be left in uncertainty; and after the lapse of a few years the principle will lead to confusion.

But the word "pauper" in the clause now in question must not be rejected, as it forms a distinct and important part of it. The residence of any person, in any town, on the day the act was passed, fixed his settlement there, unless, within a year, he had received support and supplies *as a pauper*. Therefore, if the supplies furnished to a man's absent children, who are paupers, may, according to the argument, be deemed as constructively furnished to the man himself, still this is not enough ;—they must have been furnished to him as a *pauper*, to bring the case within the exception ; and if not within the exception, it must be within the rule. It is not pretended in the case before us that the father was a pauper within the year, or that he *personally* received aid from any town. Now can it have been the intention of the legislature that a man who had his dwelling in a particular town on the day mentioned,—was possessed of a large estate,—taxable and taxed therein,—should not gain a settlement in such town, merely because one of his minor children was destitute, in some

distant part of the State, and was then actually receiving support from the town in which he was then resident ? Do the supplies thus furnished to the son, *ipso facto* convert the father into a pauper, according to the true intent and meaning of the provision ? Such a construction not only seems to do violence to the plain and direct language of the act, and to have a manifest tendency to abolish the principle of reciprocity, founded on taxation and support ; but also to lead to all that uncertainty and confusion in deciding questions of settlement hereafter, which was evidently intended to be avoided, by fixing on that day as a *terminus a quo*. Such a construction we think inadmissible ; and after mature considera-tion we are of opinion that supplies cannot be considered as fur-nished to a man as a pauper, unless furnished to *himself personally*, or to *one of his family* ; and that those only can be considered as his family, who continue *under his care and protection*. As the language of the statute is plain, we are not disposed to seek for occult meanings, and thus draw conclusions which may never have been contemplated by the legislature. The consequence is, that the supplies furnished in this case to the children, cannot be considered as furnished to the father, as a pauper ; and accordingly the exceptions are overruled, and the judgment of the Court of Common Pleas affirmed.